UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
08-CV-5060(JMR/AJB)

Domaine Serene Vineyards and   )
Winery, Inc.                   )
                               )
          v.                   )          ORDER
                               )
Anthony Rynders                )

Things have gotten crossways, if not "Sideways," between plaintiff, a pinot noir grower, and its former winemaker, defendant, Anthony Rynders.  All is not serene at the Domaine vineyard.  The winery filed suit in Minnesota state court accusing defendant of dealing in his own, rather than his employer's, interest.

The Court expresses no opinion concerning the merits of the substantive dispute.  It must, however, consider the propriety of defendant's August, 2008, removal of this matter to federal court. Once removed, the vintner asked the Court to dismiss the case for improper venue, or transfer venue to the District of Oregon.  The winery has countered by moving for remand.

Upon review, the Court finds it is without subject matter jurisdiction, and remands the matter to state court [Docket No. 12].  In the absence of jurisdiction, the Court may not rule on defendant's motion [Docket No. 4].

I.  Background

    A.  The Parties

    Plaintiff, Domaine Serene Vineyards and Winery, Inc. ("Domaine Serene"), produces and sells premium pinot noir, chardonnay, and syrah wines.  It is incorporated in Minnesota.  Its business operations, encompassing most accounting functions, including payroll, accounts receivable, and invoicing, as well as human resources, are based in Maple Grove, Minnesota.  One marketing employee works from North Carolina.  The company, however, manufactures Oregon wines, which are produced, bottled, stored, and shipped from Oregon.  Its wine tastings are conducted at the company's Dayton, Oregon, location.  The majority of Domaine Serene's employees work at the Oregon vineyard.  The company's stationery lists Oregon as its contact location.

    Defendant, Anthony Rynders, resides in Forest Grove, Oregon. He worked as Domaine Serene's winemaker from 1998 through May, 2008, without an employment contract.  The employee/employer relationship ripened, coming to fruition in March, 2001, when Domaine Serene offered Rynders additional financial inducement in the form of an Employee Incentive Agreement.  Under this Agreement, Rynders was to receive a percentage of profits generated by Domaine Serene's Rockblock Syrah wine.  The Agreement was not an employment contract, and Rynders remained an "at-will" employee.  The Agreement particularly specified that legal disputes related to it

be "brought in an appropriate Minnesota court." Intoxicated by future prospects, each party consented "to the exclusive jurisdiction of the courts of the State of Minnesota for this purpose."

In 2004, Rynders began to explore separate opportunities in the wine industry. To this end, he invested in a vineyard and purchased a small farm. In May, 2008, he proposed to Domaine Serene that his position be changed to that of consultant. One week later, Domaine Serene fired Rynders and had him escorted from the property.

    B.  <u>Procedural History</u>

Three months after Rynders' termination, the winery filed suit in Minnesota state court seeking a declaratory judgment that the Employee Incentive Agreement had been terminated. It further accused Rynders of violating the Uniform Trade Secrets Act, breaching his duty of confidentiality and loyalty, as well as his fiduciary duty, and theft of computer files and documents.

Rynders removed the case to federal court. Domaine Serene claims there is a lack of diversity; Rynders claims the company has bootstrapped its trade secrets claims by use of the Employee Incentive Agreement's forum-selection clause.

II.  <u>Diversity Jurisdiction</u>

A federal case always begins with the question of jurisdiction. <u>Mouawad v. Gonzales</u>, 485 F.3d 405, 411 (8th Cir.

3

2007) ("At the threshold, we must determine whether Congress has granted our court jurisdiction to decide this issue."). This case comes before the Court on defendant's claim of diversity, within the contemplation of 28 U.S.C. § 1441(a). Congress has conferred upon the District Courts original jurisdiction over civil actions where the amount in controversy exceeds $75,000, and the dispute concerns citizens of different states. 28 U.S.C. § 1332(a). Diversity jurisdiction requires that "<u>each</u> defendant is a citizen of a different State from <u>each</u> plaintiff." <u>Owen Equip. & Erection v. Kroger</u>, 437 U.S. 365, 373 (1978) (emphasis in original). Courts determine citizenship as of the date the complaint was filed. <u>Janzen v. Goos</u>, 302 F.2d 421, 424 (8th Cir. 1962).

The parties appear to agree there is more than $75,000 at issue. The dispute, then, turns on whether the parties are diverse.

Anthony Rynders is a resident of Oregon. He claims the parties are diverse because Domaine Serene is a citizen of Minnesota. Domaine Serene responds by claiming citizenship in both Oregon and Minnesota. If Domaine Serene is correct, the Oregon portion of its citizenship places it, and the winemaker, in Oregon, meaning there is incomplete diversity. If the winery and Rynders are each citizens of Oregon, the door to the federal courthouse is locked - compelling remand.

4

A.   <u>Principal Place of Business</u>

A corporation, unlike an individual, may be a citizen of more than one state.   28 U.S.C. § 1332(c)(1).   "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."   <u>Id.</u>   Corporations may only have one "principal place of business" for diversity of citizenship purposes.   <u>Capitol Indem. Corp. v. Russellville Steel Co.</u>, 367 F.3d 831, 835 (8th Cir. 2004). Clearly, plaintiff's Minnesota incorporation makes it a citizen of this state.   But if its principal place of business is Oregon, it is also a citizen of that state.

The diversity statute does not define a corporation's principal place of business, compelling the courts to do so.   These efforts have borne fruit of three varieties.   First is the "nerve center" test, which "makes the 'home office,' or place where the corporation's officers direct, control, and coordinate its activities, determinative."   <u>Peterson v. Cooley</u>, 142 F.3d 181, 184 (4th Cir. 1998).   The second, "corporate activities" test, considers the employees' location, the corporation's tangible property, and the location of production facilities.   <u>Kelly v. U.S. Steel Corp.</u>, 284 F.2d 850, 854 (3d Cir. 1960).   The third test is the "total activity" test.

As of 2004, the Eighth Circuit Court of Appeals "ha[d] not adopted a test for determining a corporation's 'principal place of

business.'"  Capitol Indem., 367 F.3d at 835.  But at the same
time, the Court of Appeals termed the total activity test the "most
appropriate and least limiting of the tests other circuits have
applied."  Id. at 836.  The total activity test is an amalgam of
the nerve center and corporate activities test.  It "recognizes
that the nature of a corporation's activities will impact the
relative importance of production activities, service activities,
and corporate decision making."  Id.  Unlike the nerve center test,
bound to the situs of the corporate headquarters, or the corporate
activities test, constrained to consider only the locus of
production facilities, the total activity test considers both.  The
Eighth Circuit noted the total activity test allowed for
flexibility, and focused on the "most appropriate" considerations.
Id.

     This District has favorably considered the total activity
test.  See, e.g., N. Star Hotels Corp. v. Mid-City Hotel Assocs.,
696 F. Supp. 1265, 1270 (D. Minn. 1988).  In North Star Hotels, the
Honorable Harry MacLaughlin cited the total activity test's ability
to provide a "realistic, flexible and nonformalistic approach to
determining a corporation's principal place of business through a
balancing of all relevant factors."  Id.  The total activity test
permits a court to consider a company's purpose when assigning a
principal place of business.  "[W]hen virtually all of the
corporate business is conducted in one state, but the headquarters

and corporate policy-making functions are located in another, the situs of the corporate business assumes greater importance." <u>Id.</u> Applying this test, Judge MacLaughlin found North Star's principal place of business was Minnesota, while Houston, Texas, was its "nerve center" for management activities. <u>Id.</u> at 1271.

Similarly, in <u>Hanna Mining Co. v. Minn. Power & Light Co.</u>, the Honorable Miles Lord found a corporation whose sole business concerned a Minnesota mining project had its principal place of business in Minnesota, "not in the state in which its executive and administrative offices may be located." 573 F. Supp. 1395, 1400 (D. Minn. 1983), <u>aff'd</u> 739 F.2d 1368 (8th Cir. 1984). Where a company's raison d'etre is tied to a particular state, that state serves as the company's principal place of business under the total activity test.

Despite the Eighth Circuit's expressed preference - if not adoption - of the total activity test, Rynders asks the Court to adopt the nerve center test, arguing plaintiff's operations in Oregon, Minnesota, and North Carolina, and its multi-state wine sales make the nerve center test the better approach. The Court rejects this suggestion. Certainly, a company's nerve center assumes greater importance "when no one state is clearly the center of corporate activity." <u>N. Star Hotels</u>, 696 F. Supp. at 1270. But Rynders errs in two ways: first, he neglects the Eighth Circuit's expressed preference; second, he exaggerates the extent of Domaine

7

Serene's Minnesota operations.   The business is incorporated in Minnesota, but the grapes are grown, vinified, bottled, and shipped from Oregon.   Oregon is clearly the center of Domaine Serene's corporate activity.   The nerve center test is inappropriate in these circumstances.

     B.   <u>Applying the Total Activity Test</u>

     Under the total activity test, plaintiff's principal place of business is Oregon.   Other than its corporate organization, virtually all of its business is conducted in, and emerges from, one state.   Almost all of its employees are based in Oregon.   This is a winemaking enterprise in the finest sense; the total activity of Domaine Serene's business is making wine, and this entire activity occurs in Oregon.   While Domaine Serene is a citizen of Minnesota with corporate offices here, this fact does not make Minnesota the company's principal place of business.   The company runs human resources, accounting, and payroll from Minnesota.   But its business is based in Oregon.   The Court finds "the situs of the corporate business assumes greater importance" than the Minnesota-based corporate policy-making functions.   <u>N. Star Hotels</u>, 696 F. Supp. at 1270.

     This result is fully consonant with Congress's intent in providing for diversity jurisdiction.   Diversity jurisdiction was created to protect individuals and corporations from prejudice against noncitizens.   Logically then, Domaine Serene's principal place of business "should be the place where it has its greatest

contacts with the public." Id. at 1272 ("[I]t is by visible presence, including the employment of local people, that a corporation will become popularly recognized as 'domestic'.") (citation omitted).  Because Domaine Serene has its most visible presence in Oregon, the very concept of diversity jurisdiction is served by this holding.

Domain Serene's dual citizenship means defendant Rynders and the company are both citizens of Oregon.  There is a lack of diversity between the parties.  Lacking subject matter jurisdiction, this Court's only function is to remand this case to state court.  28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

III. Conclusion

Because this Court lacks diversity jurisdiction, it will not consider defendant's motion to dismiss for improper venue or transfer.  See Integrated Health Servs. v. THCI Co., 417 F.3d 953, 957 (8th Cir. 2005) (noting that "a court without subject matter jurisdiction cannot transfer a case to another court under 28 U.S.C. § 1404(a)").

Accordingly, IT IS ORDERED that:

1.   Defendant's motion to dismiss for improper venue or transfer [Docket No. 4] is denied.

2.   Plaintiff's motion to remand [Docket No. 12] is granted.

9

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  January 9, 2009


S/JAMES M. ROSENBAUM
JAMES M. ROSENBAUM
United States District Judge